UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DERRICK RODRIGUEZ,

Plaintiffs,

v.

RYDER TRUCK RENTAL, INC.,

Defendant.

Case No. 2:26-cv-0006-JCM-MDC

**ORDER**

Presently before the court is defendant's motion to dismiss plaintiff's amended complaint. (ECF No. 10). Plaintiff filed a response (ECF No. 11), to which defendant replied (ECF No. 12). For the reasons stated below, the court grants defendant's motion to dismiss.

Also before the court is defendant's first motion to dismiss (ECF No. 8). The court notes shortly after the first motion was filed, plaintiff filed a first amended complaint ("FAC"). (ECF No. 9). No response to defendant's first motion to dismiss was filed. Because defendant's first motion to dismiss is now rendered moot, the court denies that motion.

## I. Background

This case arises from Plaintiff Derrick Rodriguez's employment termination. Rodriguez was employed by Ryder Truck Rental ("Ryder") as a technician from April 5, 2016 to May 23, 2025. (ECF No. 9 at 3). Rodriguez was classified and paid as a "T2 technician." *Id.* Ryder allegedly forced Rodriguez to perform "T3 technician duties"[1] over the course of his employment. Ryder claims that T3 technician duties were more advanced, and thus required constituted higher pay. *Id.* at 4.

Rodriguez "exercised his right under the CBA" and told Ryder that he would no longer perform T3 duties without "proper compensation." *Id*. Rodriguez further filed "formal complaints" to his human resources representatives, supervisors, and local union regarding his "out-of-classification" work. *Id.* at 5.

[1] T3 duties constituted, "higher classification of work" and "involved more advanced technical work than T2 duties." (ECF No. 9 at 4).

In fall of 2024, Rodriguez received two warnings for "insubordination." *Id.* Ryder eventually terminated Rodriguez's employment on May 23, 2025. *Id.* at 6. The reason for termination was "stealing time," meaning that Rodriguez was being paid for time during which he was not working. *Id.* However, Rodriguez denies this. Rodriguez instead argues that his termination was in retaliation for the complaints he filed. *Id.*

Rodriguez asserts three causes of action against Ryder. First, Rodriguez alleges that Ryder violated Section 215(a)(3) of the Fair Labor Standards Act (FLSA) by terminating him for filing workplace complaints. Next, Rodriguez argues that his termination violated public policy under Nevada law. Lastly, Rodriguez asserts a claim for intentional infliction of emotional distress. Ryder moves to dismiss all claims for failure to state a claim and preemption under the Labor Management Relations Act (LMRA). Rodriguez further asks the court for leave to amend his claims if the court finds deficiency.

## II. Failure to State a Claim

### A. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id*. (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id*.

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys.,* Inc., 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments ... undue prejudice to the opposing party ... futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

B. <u>FLSA Violation</u>

Rodriguez specifically alleges that Ryder violated § 215(a)(3) of the FLSA by terminating him for "exercising his contractual right under his CBA" and filing formal complaints to Ryder's human resource representatives, filing union grievances with Teamsters Local 631, and reporting

CBA violations to his supervisors. (ECF No. 9 at 10). Ryder asserts that Rodriguez's claim fails because his complaints are not "protected" under the FLSA. (ECF No. 10 at 3). This court agrees.

FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding *under or related to* this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]" 29 U.S.C. § 215(a)(3) (emphasis added).

"To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of *rights protected by the statute* and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (emphasis added). "[N]ot all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of § 215(a)(3)." *Rosenfield v. GlobalTranz Enters., Inc*., 811 F.3d 282, 286 (9th Cir. 2015) (citing *Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999)).

The FLSA "sets forth employment rules concerning minimum wages, maximum hours, and overtime pay." *Kasten*, 563 U.S. at 4; *see* 29 U.S.C. § 201 *et seq*. Claims do not "arise under or relate to" the FLSA unless they implicate the statute's overtime or minimum wage requirements. *See* 29 U.S.C. § 215(a)(3); *Sullivan v. Riviera Holdings Corp*., Case No. 2:14-cv-00165-APG, 2014 WL 2960303, at *2 (D. Nev. June 30, 2014) (dismissing FLSA claim because plaintiff failed to allege that wages received fell below $7.25 statutory minimum).

Here, Rodriguez's complaints concern differences in work duties. (ECF No. 1 at 8). Rodriguez does not plead any facts regarding minimum wage, maximum hours, or overtime. *Id*. Although Rodriguez mentions not receiving adequate compensation for his work duties, no facts indicate that he was paid less than the applicable minimum wage or denied required overtime pay. Rodriguez only asserts that he was "required to perform T3 duties while paying him a lower T2 rate." *Id.* However, this fails to unlikely comport with the "related to" language of the FLSA. *Id.*; *see Levert v. Trump Ruffin Tower I, LLC*, Case No. 2:14-cv-1009-RCJ-CWH, 2015 WL 133792, at

*3 (dismissing complaint in similar circumstances, noting plaintiff's failure to allege hourly wage or any facts leading to inference of FLSA violation).

In sum, Section 215(a)(3) protects only from retaliation for complaints made "under or related to" the FLSA. *See* 29 U.S.C. § 215(a)(3). Because the statute does not cover Rodgriguez's allegations, his complaint fails to state a claim for FLSA retaliation. Thus, Rodriguez's claim must be dismissed.

C. Wrongful Termination in Violation of Public Policy

Ryder argues that Rodriguez's wrongful termination claim should be dismissed because Rodriguez has not alleged a strong and compelling Nevada public policy that has been violated. The court agrees.

Under Nevada law, employees are presumed to be employed "at-will." *Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882, 884–85 (1999). The at-will rule gives employers the right to discharge employees for any reason, or for no reason at all. *Id*. However, the Nevada Supreme Court has recognized a narrow, public policy exception to this rule. *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394, 396 (1984) ("the at-will employment rule is subject to limited exceptions founded upon strong public policy").

A claim for tortious discharge in violation of public policy requires that (1) an employer, in its discharge of an employee, violated the public policy of Nevada and (2) that there is no adequate statutory remedy available under Nevada law to allow victims to bring suit and recover tort damages for their injuries. *See D'Angelo v. Gardner*, 107 Nev. 704, 819 P.2d 206, 216–17 (1991).

Here, Rodriguez asserts that his termination violated Nevada's public policy against an employee's right to file workplace complaints. (ECF No. 9 at 8). Rodriguez asserts that such public policies are embodied in (1) National Labor Relations Act 157, (2) Nevada Revised Statutes Chapter 613, and (3) FLSA 215(a)(3). However, none of the statutes Rodriguez cites reflect a clear policy prohibiting wrongful termination for complaints made to human resources, unions, or work supervisors.

The Nevada Supreme Court is extremely protective of the at-will employment rule and does not adopt exceptions lightly. *Taylor v. Louisiana Pac. Corp*., 165 F.3d 36 (9th Cir. 1998). "[P]ublic

policy tortious discharge actions are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." *Sands Regent v. Valgardson*, 105 Nev. 436, 440 (1989); *see also Bigelow v. Bullard*, 111 Nev. 1178, 1182 (1995) ("[T]his apparent exception to the at-will rule is a narrow one"). Exceptions are not adopted even when supported by explicit legislative statements of public policy. *See Valgardson*, 105 Nev. at 439-40 ("Clearly, Nevada has a public policy against age discrimination. Nevertheless, we do not perceive that our public policy against age discrimination is sufficiently strong and compelling to warrant another exception to the 'at-will' employment doctrine").

The Nevada Supreme Court failed to recognize age discrimination and illegal activity as a "sufficiently strong and compelling" public policy exception; therefore, it would be unlikely to do so here. *See id*; *Allum v. Valley Bank of Nevada*, 114 Nev. 1313, 970 (1998). Rodriguez cites no legislative statements or cases, and this court has found none, demonstrating that the Nevada Supreme Court would broaden the public policy exception rules to employees who complain to human resource representatives, supervisors, or unions about CBA violations.

In sum, because Rodriguez fails to assert a strong and compelling policy that warrants circumventing the at-will employment rule, his wrongful termination claim is dismissed.

D. Intentional Infliction of Emotional Distress

The Nevada Supreme Court has recognized the tort of intentional infliction of emotional distress ("IIED") in the employment termination context. *See Shoen v. Amerco, Inc.,* 111 Nev. 735, 747 (1995) (finding that verbal threats, frivolous litigation, and withholding of retirement funds "for the express reason of causing ... extreme financial hardship" constituted potentially extreme and outrageous conduct (in the employment context)).

To assert a claim for IIED, a plaintiff must allege that: (1) defendant engaged in extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff having suffered severe or extreme emotional distress, and (3) actual or proximate causation. *Star v. Rabello*, 97 Nev. 124, 125 (1981); *Shoen* 111 Nev. at 747. Rodriguez fails to plausibly allege facts establishing a prima facie IIED claim.

"[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citing BAJI 12.74). Termination, without more, does not reach the level of extreme and outrageous conduct. *See Brooks v. Hilton Casinos, Inc.*, 959 F.2d 757, 765 (9th Cir.1992); *Hirschhorn v. Sizzler Restaurants Int'l, Inc.*, 913 F. Supp. 1393, 1400 (D. Nev. 1995).

Here, Rodriguez asserts that Ryder conducted a "deliberate campaign of retaliation" that led to his termination. (ECF No. 9 at 10). The campaign consisted of two warnings and one suspension before an eventual termination. *Id.* These assertions are far from "beyond all possible bounds of decency." *But see Russo v. Clearwire US, LLC*, Case No. 2:12-cv-01831-PMP, 2013 WL 1855753, at *6 (D. Nev. Apr. 30, 2013) (employer refused to promote and discouraged him from applying for open positions because of his disability). Warning and eventually firing an at-will employee is not indicative of extreme and outrageous conduct. *See Alam v. Reno Hilton Corp.,* 819 F.Supp. 905, 911 (D. Nev. 1993) (finding that "termination of employees, even in the context of a discriminatory policy, does not in itself amount to extreme and outrageous conduct").

Rodriguez also fails to show how Ryder intended to cause emotional distress or acted with reckless disregard for the possibility of causing emotional distress. A mere conclusory statement that Ryder "acted intentionally and with reckless disregard" does not establish *Twombly* plausibility. (ECF No. 9 at 11); *but see Shoen*, 111 Nev. at 747 (intentionality established when defendant admitted to litigating a lawsuit solely to harass the plaintiff and knew that termination would cause the plaintiff extreme distress, as the defendant and plaintiff had undergone counseling together).

Because Rodriguez fails to show how Ryder engaged in extreme and outrageous conduct intended to cause him extreme emotional distress, he fails to state an IIED claim. The court need not address the other elements. Consequently, the court dismisses Rodriguez's IIED claim.

**III. LMRA Preemption**

Ryder further argues that the LMRA preempts all of Rodriguez's claims. (ECF No. 10 at 11). However, the LMRA would not preempt Rodriguez's FLSA claim because federal statutes do not preempt other federal statutes. *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142,

1153 (9th Cir. 2020). Furthermore, having dismissed Rodriguez's wrongful termination and IIED claims, the court need not address whether the LMRA preempts these claims.

**IV. Leave to Amend**

Rodriguez asks that the court grant him leave to amend his complaint. (ECT No. 11 at 14). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," but is not obligated to do so. Fed. R. Civ. P. 15(a)(2). "In determining whether leave to amend is appropriate, the district court considers the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility" of the amendment. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). In particular, the court need not give leave to amend where "it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

The court finds that amendment would be futile, and on that basis, denies Rodriguez's request to amend his complaint. Because the amended complaint, motion to dismiss, and respective reply briefs fully outline the relevant issues in this case, amendment would not cure claim defects. Rodriguez's request for leave to amend is denied.

**V. Defendant's Original Motion to Dismiss**

The filing of "an amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir.1997) (internal citation omitted) (overruled on other grounds). A motion to dismiss that targets an earlier complaint is thus rendered moot by a later-filed amended complaint. *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).

Because defendant's first motion to dismiss (ECF No. 8) is now rendered moot, the court denies this motion on that basis without considering the merits of the motion.

**VI. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Ryder's motion to dismiss (ECF No. 10) be, and the same hereby is, GRANTED with prejudice.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that defendant's first motion to dismiss (ECF No. 8) is DENIED as MOOT.

Dated this 14th day of September, 2026.

James C. Mahan

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE